**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:26-CV-61036-KUNTZ/AUGUSTIN-BIRCH**

**MARY PALACIOS,**

**Plaintiff,**

**v.**

**BROWARD COUNTY, FLORIDA,**

**Defendant.**
________________________________________/

**REPORT AND RECOMMENDATION TO GRANT**
**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

This cause comes before the Court on Defendant Broward County, Florida's Motion to Dismiss Plaintiff Mary Palacios' Complaint. The Motion to Dismiss is fully briefed at docket entries 5, 16, and 17. The Honorable Ed Artau, United States District Judge, referred the Motion to Dismiss to the undersigned United States Magistrate Judge for a report and recommendation. DE 21. Subsequent to that referral, Judge Artau transferred this case to the Honorable Jeffrey T. Kuntz, United States District Judge. DE 22. The Court has carefully reviewed the briefing and the record and is fully advised in the premises. For the reasons set forth below, the Court recommends that the Motion to Dismiss [DE 5] be **GRANTED** and that the Complaint [DE 1] be **DISMISSED**.

## I. Plaintiff's Allegations

Plaintiff pled claims of sex discrimination (Counts I and IV), retaliation (Counts II and V), and a hostile work environment (Counts III and VI) in violation of Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act ("FCRA"). As the basis for her claims, she alleged

that Defendant employed her from February 24, 2020, until February 15, 2024. DE 1 ¶¶ 12, 27. She "faced escalating discrimination, retaliation, and a hostile work environment throughout 2021 and into early 2024." *Id.* ¶ 15. In February of 2021, her male subordinate, Miguel Solivan, "filed an internal EEO complaint . . . alleging retaliation by Plaintiff," and Defendant later administratively closed the complaint as unsubstantiated. *Id.* ¶¶ 15, 17. In July of 2021, Mr. Solivan "filed another internal EEO complaint . . . again asserting claims of mistreatment," and this complaint "lacked evidentiary support and relied on vague allegations." *Id.* ¶ 18.

"From 2020 and continuing into early 2024, Plaintiff reported that Mr. Solivan engaged in repeated unprofessional, hostile, and insubordinate conduct, including refusing directives, raising his voice during one-on-one meetings, making argumentative comments, undermining her authority, and exhibiting a pattern of bullying conduct." *Id.* ¶ 19. "Plaintiff reported that at times she felt fearful of Mr. Solivan due to his anger and volatility." *Id.* "Rather than addressing Plaintiff's concerns, [Defendant] permitted Mr. Solivan to escalate the situation by filing fabricated allegations against her, including claims that she discriminated against him and treated him differently from other staff." *Id.* ¶ 20; *see also id.* ¶ 23 ("Rather than addressing Plaintiff's concerns, [Defendant] permitted Mr. Solivan to escalate the situation by filing fabricated allegations accusing Plaintiff of discrimination and mistreatment."). Plaintiff's "male supervisors repeatedly dismissed, minimized, or ignored her legitimate complaints regarding [Mr. Solivan], who engaged in ongoing misconduct and insubordination." *Id.* ¶ 15.

In January of 2024, Defendant's "Professional Standards Division issued a report crediting Mr. Solivan's complaint against Plaintiff," "accept[ing] his allegations at face value," and "fail[ing] to address the falsehoods embedded in Mr. Solivan's complaint." *Id.* ¶¶ 24–25. On the final day of Plaintiff's employment, she "was summoned to a meeting with the Director, Human

Resources personnel, and her supervisor, where she was informed that [Defendant] intended to terminate her employment based on the Professional Standards report and the false accusations lodged by her subordinate." *Id.* ¶ 27. "Plaintiff emphasized that she did not want to leave her job," and Defendant then "inform[ed] her that she would be 'permitted' to resign." *Id.* ¶ 28. "Plaintiff did not submit a voluntary resignation letter," but instead signed a resignation form Defendant prepared "under duress and in the face of imminent termination." *Id.* ¶ 29. Defendant's "actions, including ignoring Plaintiff's complaints, crediting unsubstantiated allegations from a male subordinate with a known history of filing baseless claims, and forcing Plaintiff to resign under threat of termination, created intolerable working conditions amounting to constructive discharge." *Id.* ¶ 31.

## II. Motion to Dismiss Standard

Defendant moves to dismiss the Complaint for failure to state a claim upon which relief can be granted. A court may grant a motion to dismiss a pleading if the pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A court ruling on a Rule 12(b)(6) motion to dismiss accepts the well-pled factual allegations as true and views the facts in the light most favorable to the plaintiff. *Jones v. Fransen*, 857 F.3d 843, 850 (11th Cir. 2017). A court should grant a motion to dismiss only when the pleading fails to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The pleading must contain more than labels, conclusions, a formulaic recitation of the elements of a cause of action, and naked assertions devoid of further factual enhancement. *Id.*

## III. Analysis

The Court examines whether Plaintiff has stated claims of sex discrimination, retaliation, and a hostile work environment under Title VII and under the FCRA. "Because the FCRA is modeled after Title VII, and claims brought under it are analyzed under the same framework, the state-law claims do not need separate discussion and their outcome is the same as the federal ones." *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010) (citation omitted).

### A. Sex Discrimination

Under Title VII, it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may show discrimination that violates Title VII through direct or circumstantial evidence of discrimination. *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1288 (11th Cir. 2003).

"[D]irect evidence proves the existence of a fact without inference or presumption." *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1270 (11th Cir. 2017) (alterations and quotation marks omitted). "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Id.* (quotation marks omitted).

If the plaintiff is proceeding based on circumstantial evidence, "[t]o state a claim under Title VII, a plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for the position, (3) he suffered an adverse employment action, and (4) he was treated less favorably than a similarly situated individual outside his protected class." *Rodemaker v.*

*Shumphard*, 859 F. App'x 450, 451–52 (11th Cir. 2021) (citing *Maynard*, 342 F.3d at 1289). A similarly situated comparator ordinarily will have engaged in the same basic conduct or misconduct as the plaintiff; will have been subject to the same employment policy, guideline, or rule as the plaintiff; will have been under the jurisdiction of the same supervisor as the plaintiff; and will share the plaintiff's employment or disciplinary history. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1227 (11th Cir. 2019). A Title VII complaint need not allege facts sufficient to make out a prima facie case of discrimination, but the complaint must provide enough factual matter taken as true to suggest intentional discrimination. *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008).

Plaintiff alleged that her "sex, as a female, was a motivating factor that caused the Defendant to discriminate against" her and that Defendant "discriminat[ed] against the Plaintiff because of her sex in the terms, conditions, and privileges of her employment." DE 1 ¶¶ 37, 70. Simply alleging that Defendant discriminated against her because of her sex is conclusory and is inadequate to plausibly state a claim of sex discrimination upon which relief can be granted. Plaintiff must plead facts showing that Defendant discriminated against her because of her sex.

To support her claim of sex discrimination, Plaintiff alleged that Defendant credited Mr. Solivan's complaints against her, while dismissing, minimizing, or ignoring her complaints about him. *Id.* ¶¶ 15, 19–20, 23–25. According to Plaintiff, her and Mr. Solivan's complaints against one another eventually led Defendant's Professional Standards Division to issue a report, and Defendant told her that her employment would be terminated based on that report. *Id.* ¶¶ 24, 27. But Plaintiff did not allege that Defendant believed Mr. Solivan's complaints and disbelieved or ignored her complaints because of her sex, much less plead facts that would support such a

conclusion. Merely alleging that Plaintiff is female and her supervisors and Mr. Solivan are male is inadequate to demonstrate that Defendant discriminated against her because of her sex.

Plaintiff pled that "[s]imilarly situated employees who are not female were not subjected to the conduct" she alleged. *Id.* ¶ 67. That allegation is conclusory. Plaintiff did not plead facts that would show there was a similarly situated employee who was treated more favorably than her. The only employee Plaintiff mentioned in the Complaint other than herself was Mr. Solivan. But she did not plead facts that would show she and Mr. Solivan were similarly situated, such as facts demonstrating that they engaged in the same conduct, had the same supervisor, or had the same employment or disciplinary history. In sum, Plaintiff did not plead facts to plausibly suggest that Defendant discriminated against her because of her sex. As Plaintiff did not plead a claim of sex discrimination upon which relief can be granted, the Court recommends that Counts I and IV of the Complaint be dismissed.

**B. Retaliation**

To establish retaliation under Title VII, a plaintiff must show that she participated in an activity protected by Title VII, that she suffered an adverse employment action, and that there is a causal connection between her participation in the protected activity and the adverse employment action. *Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir. 2001). Statutorily protected activity is opposing an unlawful employment practice or making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing before the Equal Employment Opportunity Commission ("EEOC"). *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000); *see also Pipkins*, 267 F.3d at 1201 (explaining that "[s]tatutorily protected expression includes internal complaints of sexual harassment to superiors as well as complaints lodged with the EEOC"). An adverse employment action is an action that is "materially

adverse from the standpoint of a reasonable employee, such that it would dissuade a reasonable employee from making a discrimination charge." *Williams v. Apalachee Ctr., Inc.*, 315 F. App'x 798, 799 (11th Cir. 2009) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).

Plaintiff alleged that she "complained about discrimination, and as a result, she was terminated" and that Defendant "retaliate[ed] against the Plaintiff because of her complaints about discrimination." DE 1 ¶¶ 41, 84. Simply alleging that she complained about discrimination and Defendant retaliated against her because of it is conclusory and inadequate to plausibly state a claim of retaliation upon which relief can be granted. Plaintiff must plead facts showing that she participated in a protected activity and that there is a causal connection between her participation and an adverse employment action.

Plaintiff did not plead factual material demonstrating she participated in a protected activity because she did not plead facts to show she complained about sex discrimination or sexual harassment.[1] She only referred to her complaints vaguely, alleging that "[f]rom 2020 and continuing into early 2024," she "reported that Mr. Solivan engaged in repeated unprofessional, hostile, and insubordinate conduct, including refusing directives, raising his voice during one-on-one meetings, making argumentative comments, undermining her authority, and exhibiting a pattern of bullying conduct." *Id.* ¶ 19; *see also id.* ¶ 82 (alleging that "Plaintiff repeatedly reported the escalating harassment and insubordination by her male subordinate, Mr. Solivan"). Merely complaining about another employee's behavior is not statutorily protected activity. Plaintiff did

[1] Plaintiff did make one allegation in the Complaint that she complained of sex discrimination. She alleged that she "gave the Corporate Defendant actual notice of sex-based discrimination . . . by repeatedly reporting the conduct to her supervisors." DE 1 ¶ 54. This allegation is conclusory, rather than fact-based. In addition, the allegation is not incorporated into Plaintiff's retaliation claims. Furthermore, the Complaint refers to a "Corporate Defendant" and an "Individual Defendant" but does not name any corporation or individual as a Defendant.

not plead facts showing that she complained Mr. Solivan's conduct against her was because of her sex.

Further, Plaintiff did not plead facts demonstrating a causal connection. She did not plead factual material to show that Defendant took an adverse employment action, such as terminating her employment, because she complained. In fact, her allegations contradict an inference that Defendant terminated her employment because she complained. She alleged that (1) she complained about Mr. Solivan for a period of years, during which time she remained employed, *id.* ¶ 19; (2) Defendant ignored her complaints, *id.* ¶¶ 15, 82; (3) Defendant's Professional Standards Division credited Mr. Solivan's complaints against her, *id.* ¶ 24; and (4) Defendant told Plaintiff that her employment was being terminated based on the Professional Standards Division's report, *id.* ¶ 27. These allegations suggest that Defendant terminated Plaintiff's employment because Defendant believed Mr. Solivan's complaints, rather than because she had made complaints. Plaintiff did not plead facts showing that Defendant took an employment action against her because she complained.

Plaintiff did not plead facts to plausibly show the elements of a retaliation claim. The Court therefore recommends that Counts I and V of the Complaint be dismissed.

### C. Hostile Work Environment

To demonstrate a hostile work environment, an employee must show (1) that she belongs to a protected group; (2) that she "has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature"; (3) that the harassment was based on the employee's sex; (4) that "the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment"; and (5) a basis for holding the employer liable. *Reeves v. C.H. Robinson*

*Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010). "Title VII's test . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* at 809 (quotation marks omitted). "The paradigm of sexual harassment as federally prohibited employment discrimination occurs when an employee's expressed terms of employment, such as salary or continued employment, are conditioned upon compliance with the employer's sexual demands." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999).

As for the severity or pervasiveness of the harassment, the "employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." *Reeves*, 594 F.3d at 809 (quotation marks omitted). To determine whether harassment objectively altered an employee's terms or conditions of employment, a court considers factors such as "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Mendoza*, 195 F.3d at 1246.

With respect to a basis for holding the employer liable, the employer may be held responsible "under either a theory of vicarious or of direct liability." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Id.* at 1278 (quotation marks omitted). "Where the perpetrator of the harassment is merely a co-employee of the victim, the employer will be held directly liable if it knew or should have known of the harassing conduct but failed to take prompt remedial action." *Id.*

Plaintiff did not plausibly allege several elements of a claim of a hostile work environment. First, she did not plausibly allege that Mr. Solivan harassed her based on her sex. She alleged that she "was subjected to the harassment because of her sex," but this allegation is conclusory. DE 1 ¶¶ 49, 92. Plaintiff must plead facts showing that Mr. Solivan's harassment was based on her sex.

To support her assertion that Mr. Solivan's harassment was based on her sex, Plaintiff alleged that, on one prior occasion, Mr. Solivan complained that a former female supervisor "had made racist remarks." *Id.* ¶ 16. Plaintiff did not plead facts demonstrating that Mr. Solivan's complaint against his former supervisor was based on the supervisor's sex. But more importantly, a single prior complaint against a female supervisor does not show that Mr. Solivan's harassment against Plaintiff was based on Plaintiff's sex. She did not plead facts to satisfy the element of harassment based on sex.

Next, Plaintiff did not plausibly allege that Mr. Solivan's harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment. She alleged that Mr. Solivan's harassment was "severe and pervasive" but, absent factual material showing harassment that was severe or pervasive, this allegation is conclusory. *Id.* ¶¶ 47, 90.

As for Plaintiff's allegations describing Mr. Solivan's harassment, she alleged that, "[f]rom 2020 and continuing into early 2024," "Mr. Solivan engaged in repeated unprofessional, hostile, and insubordinate conduct." *Id.* ¶ 19. His conduct included "refusing directives, raising his voice during one-on-one meetings, making argumentative comments, undermining her authority, and exhibiting a pattern of bullying conduct." *Id.*; *see also id.* ¶ 47 (alleging that Mr. Solivan engaged in "insubordination, bullying, intimidation, false accusations, undermining Plaintiff's authority, and intentionally weaponizing [Defendant's] complaint process against her"); *id.* ¶ 90 (alleging that Mr. Solivan engaged in "insubordination, bullying, refusal to comply with work directives,

and repeated fabricated accusations against Plaintiff"). During two meetings, security staff heard "loud male voices coming from the conference room." *Id.* ¶ 21.

These allegations show that Mr. Solivan was insubordinate towards his supervisor. But without more, the allegations do not show that his behavior was so severe or pervasive as to alter the terms and conditions of Plaintiff's employment. Not every antagonistic relationship between employees provides a basis for a claim of a hostile work environment. Title VII is not "a general civility code," and the "standards for judging hostility are sufficiently demanding" so as to "filter out complaints attacking the ordinary tribulations of the workplace." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quotation marks omitted). The hostile conduct "must be extreme to amount to a change in the terms and conditions of employment." *Id.* Without additional facts describing Mr. Solivan's conduct towards Plaintiff and its frequency, the Complaint does not plausibly allege that his behavior was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment.

Finally, Plaintiff did not plausibly allege a basis for holding Defendant liable for Mr. Solivan's conduct because she did not plead facts showing that Defendant knew or should have known of his conduct and failed to take remedial action. The Complaint lacks factual material showing that Plaintiff complained to Defendant that Mr. Solivan was harassing her because of her sex, rather than complained because of his general insubordination.

Plaintiff did make one allegation that she "gave the Corporate Defendant actual notice of sex-based discrimination." DE 1 ¶ 54. As stated above, this allegation is conclusory, rather than fact-based. Plaintiff did not plead facts demonstrating a basis for holding Defendant liable for Mr. Solivan's behavior.

Plaintiff did not plead facts to plausibly show the elements of a claim of a hostile work environment. The Court therefore recommends that Counts III and VI of the Complaint be dismissed.

## IV. Conclusion

Based on the foregoing analysis, the Court recommends that Defendant's Motion to Dismiss [DE 5] be **GRANTED**. The Court recommends that the Complaint [DE 1] be **DISMISSED**.

As for Plaintiff's ability to amend the Complaint, she asked for permission to amend within her response to the Motion to Dismiss. Requesting leave to amend in such a manner is improper, as requests for relief must be made by motion. Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); *Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018) ("This Court has explained that filing a motion is the proper method to request leave to amend a complaint, and that a motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." (alteration and quotation marks omitted)); *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." (quotation marks omitted)). If Plaintiff wishes to request leave amend the Complaint, she has an opportunity to do so by motion during the objections period.

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on

unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Chambers at Fort Lauderdale, Florida, this 28th day of September, 2026.

PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE